IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMANDA C. VALLEJOS,

       Plaintiff,

vs.                                                  No.  03cv0005  DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Vallejos') Motion to Reverse or Remand Administrative Decision **[Doc. No. 11]**, filed on October 29, 2003, and fully briefed on January 12, 2004.  On July 18, 2002, the Commissioner of Social Security issued a final decision denying Vallejos' claim for supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Vallejos, now thirty-seven years old, filed her application for supplemental security income on July 7, 2000, alleging disability since June 1, 2000, due to memory loss, depression, arthritis in her left knee, and back problems.[1]  Tr. 73.  Vallejos has an eighth grade education (Tr. 310) and

---

[1] Vallejos applied for supplemental security income on July 28, 1999. This application was denied on December 13, 1999.  On February 10, 2000, Vallejos filed a request for reconsideration which was denied on February 22, 2000.  Vallejos did not appeal this ruling.  On July 7, 2000, Vallejos filed a new application which was denied on October 31, 2000.  On January 3, 2001, Vallejos filed a request for reconsideration which was denied on June 25, 2001. After holding a

no past relevant work as defined by the regulations. However, Vallejos previously worked as a candy factory machine operator and garment factory machine operator. Tr. 74. On July 18, 2002, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Vallejos' had "a combination of impairments that [were] 'severe' within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 14. As to her credibility, the ALJ found Vallejos' "allegations regarding her limitations [were] not totally credible." Tr. 17. Vallejos filed a Request for Review of the decision by the Appeals Council. On October 29, 2002, the Appeals Council denied Vallejos' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Vallejos seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

---

hearing on March 20, 2002, the ALJ denied benefits on July 18, 2002. This appeal followed.

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Vallejos makes the following arguments: (1) the ALJ mischaracterized the medical evidence; (2) the ALJ's credibility finding is not supported by the evidence; and (3) the ALJ erred in disregarding Mr. Courter's opinion, a counselor with Counseling Associates, Inc., and the opinions of Drs. Johnson and Parsons.

**A.  Mischaracterization of Evidence**

Vallejos contends "[t]here are several mischaracterizations of the medical evidence." Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 4. However, Vallejos fails to cite the evidence she contends the ALJ mischaracterized. Accordingly, the Court cannot address this contention. Vallejos also contends the ALJ "state[d] there are no objective findings of left knee problems, but ignores the x-rays that clearly show problems with the knee." *Id.* The Court has reviewed the record and finds that the ALJ did not ignore Vallejos' left knee x-rays. The ALJ's decision addressed the x-rays as follows:

> In regard to her physical status, Ms. Vallejos' subjective complaints are well out of proportion to the objective medical findings. <u>Ms. Vallejos has undergone an anterior cruciate ligament repair of her left knee.  She has no discernable back problem, and x-rays of her knee showed nothing that would account for significant subjective complaints or functional limitations.</u>  Further, Ms. Vallejos testified that her daily activities included yard work, laundry, some ironing, shopping with her sister, and cooking.  X-rays of her cervical spine done in August 1999 were normal (Exhibit 36F9).  Ms. Vallejos underwent a consultative examination in December 1999 and she was assessed as capable of lifting ten to twenty pounds frequently, up to fifty pounds occasionally, and that her standing and walking were limited to two to three hours per day when her reported knee pain and stiffness were evident.  No other significant limitations were offered (Exhibit 7F3). <u>However, the x-rays done in December showed the retained screws from her previous knee

> surgery, but no acute abnormalities or evidence of joint effusion was identified. X-rays of her lumbosacral spine and right knee were also normal (Exhibit 22F2). Given the lack of abnormal findings, I believe the consultative examiner's assessment regarding Ms. Vallejos' standing and walking abilities was overly conservative. There are no current objective findings which would support diminished exertional or non-exertional tolerances which would reasonably impose limitations of less than that required for the physical performance of 'light' and 'sedentary' types of work.

Tr. 15-16 (emphasis added). The ALJ's findings as to Vallejos' left knee problem are supported by the record. On December 11, 2000, in response to her complaints of back and knee pain, Vallejos' physician ordered x-rays of her lumbosacral spine and her knees. Tr. 228. The radiologist's report indicates: "Normal lumbosacral spine and right knee. Status post anterior cruciate ligament repair in the left knee. Otherwise normal left knee." Tr. 228. Vallejos' contention that the ALJ ignored the results of her left knee x-rays is without merit.

### B. Credibility Determination

Vallejos' also contends the ALJ "made grossly improper evaluations" of her credibility. Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 4. Vallejos claims the ALJ found she was not credible because "he did not find records to substantiate her complaints." *Id.* Vallejos argues "she should not be penalized for lack of records because she was unable to afford continuous care as she lost her Medicaid." *Id.*

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206

F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility. *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, "and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The inability to work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

In his decision, the ALJ considered Vallejos' mental and physical impairments and found them severe but not disabling. The ALJ recognized that Vallejos had a pain producing impairment but her "subjective complaints [were] well out of proportion to the objective medical findings." Tr. 15. The ALJ further found Vallejos "[had] no discernable back problem, and x-rays of her knee showed nothing that would account for significant subjective complaints or functional limitations." *Id.* Substantial evidence supports these findings. As previously noted, x-rays of Vallejos' lumbosacral spine taken on December 11, 2000, demonstrated "disc and vertebral body heights to be well maintained," "alignment [was] normal," and there were "no degenerative changes." Tr. 228. The x-rays of Vallejos' knees taken on the same day also were unremarkable. *Id.* On December 14, 2000, Dr. Lashinski noted "x-ray of back and bilat. knees were within normal limits." Tr. 287. The ALJ also considered Vallejos' daily activities. Tr. 15.

Vallejos testified her daily activities included yard work, cooking, laundry, ironing and shopping. Tr. 317-318.

Additionally, the ALJ considered Vallejos' mental impairment but found "her level of overall functionality contradicts the presence of disabling mental illness." Tr. 15. The ALJ considered that Vallejos lived with and cared for her three children effectively and engaged in a wide range of routine domestic activities. *Id.* Finally, the ALJ considered Vallejo's documentary testimony that she had no problems getting along with family, friends, neighbors and authority figures. *Id.*, Tr. 65. Accordingly, the record does not support Vallejos contention that the ALJ found her not credible because he did not find records to substantiate her complaints. The ALJ set forth the specific evidence he relied on in finding Vallejos was not totally credible.

## C.  Treating Source Opinion

Finally, Vallejos contends the ALJ disregarded the opinions of Counseling Associates, Inc. and Drs. Johnson and Parsons. According to Vallejos, "the medical file is uncontroverted as to Plaintiff's mental impairments." Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 5.

Generally, the ALJ must "give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). A treating physician's opinion is considered in relation to factors such as its consistency with other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. 20 C.F.R. § 404.1527(d) (1)-(6). If the physician's opinion is "brief, conclusory and unsupported by medical evidence," that opinion may be rejected. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). If the opinion of the claimant's physician is

to be disregarded, specific legitimate reasons for this action must be set forth.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."  *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Although Drs. Johnson and Parsons are not considered treating physicians, under the regulations, they are considered a "nontreating source."  *See* 20 C.F.R. § 416.902.  A nontreating source means "a physician, psychologist, or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with the claimant.  *Id.*  This term includes an acceptable medical source who is a consultative examiner for the agency, when the consultative examiner is not a claimant's treating source.  *Id.*   An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not examined [claimant].  *See* 20 C.F.R. § 416.927(d)(1).  In addition, the ALJ generally must give more weight to a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.  *See*  20 C.F.R. § 416.927(d)(5).

Vallejos claims the ALJ failed to give Counseling Associates, Inc., a treating source, the appropriate weight.  Vallejos first sought counseling at Counseling Associates, Inc. on August 29, 2000. Tr. 204-207.  At that time, Vallejos reported to the psychologist that she had "never been treated or received psychiatric medications."  Tr. 204.  Vallejos complained of long-term depression and anxiety.  Vallejos also complained of panic attacks that she reported started around 1993.  She reported symptoms of sadness, frequent crying, social isolation and withdrawal, diminished interest, loss of appetite, sleep problems, motor retardation, fatigue, low

self-esteem, poor concentration, indecisiveness, hopelessness, and suicide ideation. *Id.* Vallejos reported long-term auditory hallucinations that consisted of "a voice calling her name" and seeing "shadows at times." *Id.* Significantly, Vallejos reported agoraphobic symptoms that she claimed kept her "frequently housebound." *Id.* According to Vallejos, she "leaves her home only when she has no other option, and situations where she is among strangers in a public setting can induce panic attacks." *Id.*

The psychologist diagnosed Vallejos with Major Depressive Disorder, Recurrent, Severe with Psychotic Symptoms, Panic Attack Disorder with Agoraphobia, Obsessive Compulsive Disorder, and Alcohol Dependence. Tr. 206. The psychologist opined Vallejos' agoraphobia symptoms made it difficult for her to leave her home or tolerate most social settings. *Id.* Dr. Gervais, a physician with Counseling Associates, Inc., prescribed Risperdal (indicated for the management of psychotic disorders) and Serazone (antidepressant). Tr. 203, 208.

On July 7, 2000, a few days prior to her evaluation at Counseling Associates, Inc., Vallejos completed a Disability Report (Adult). Tr. 72-81. In response to the question regarding "the illnesses, injuries or conditions that limited her ability to work," Vallejos noted "lost (sic) of memory, bad left leg, depression, and arthuritis (sic) on left leg, and bad back." Tr. 73. Vallejos did not mention that she suffered from panic attacks, heard voices and saw shadows or that she was afraid to leave her home.

On that same day, an agency employee interviewed Vallejos. Tr. 82-85. The interviewer noted "Claimant was groomed well, had several bruises on arms above the elbow. She had trouble walking, walked with a limp on right side." Tr. 84. The interviewer noted Vallejos had no problems hearing, reading, breathing, understanding, concentrating, talking, answering, sitting,

standing, seeing, writing or using her hands.  *Id.*  The interviewer also noted Vallejos was coherent.  *Id.*

On August 23, 2001, Larry Courter, a licensed professional mental health counselor associated with Counseling Associates, Inc., completed an "Integrated Clinical Summary-Update."  Tr. 280.  Mr. Courter noted Vallejos had "worked 19 years at Levi's, but is now in the process of applying for SSI benefits due to her long term depression, anxiety, agoraphobia, and memory concentration problems."  Tr. 280.  Vallejos worked nine months for Levi Strauss.  Tr. 74.  Significantly, Mr. Courter noted, "Current medications have been successful in decreasing symptomology somewhat, and the client has become more expressive with each session.  Tr. 280.  At this time, Vallejos' was on Risperdal (antipsychotic agent), Serazone, and Paxil.  *Id.*

The only other records from Counseling Associates, Inc. indicate Vallejos received services on September 18, 2001 and December 10, 2001.  On September 18, 2001, Mr. Courter noted Vallejos' symptoms were better.  Tr. 284.  On December 10, 2001, Mr. Courter again noted a "decrease in symptomology."  Tr. 283.

On March 20, 2002, Mr. Courter wrote the following "To Whom It May Concern" letter:

> Due to the nature and history of the client's diagnosis, along with her medical issues, it is viewed as unrealistic to expect Ms. Vallejos to participate in regular work at this present time, i.e., her depressive symptoms, memory issues, headaches, leg problems, ulcers, and inability to interact with others, continue to be quite disabling.
>
> The client has been compliant for some time regarding medications and appointments, and is attentive and responsive now that therapeutic rapport has been established. Additionally, there has been no drug or alcohol use for over a year now to the best of our knowledge.

Tr. 279.

On October 10, 2000, Dr. Will D. Parsons, a psychologist, performed a consultative evaluation. Tr. 191-197. Vallejos informed Dr. Parsons that she quit her job with Levi Strauss because she was having problems with some "dude" and quit the candy factory because the job required her to stand for long periods of time. Tr. 192. Although Vallejos reported she suffered from memory loss, she had no problems remembering past events. Dr. Parsons inquired about hallucinations and/or delusions. Vallegos responded, "I hear voices all the time. I see people off to the side. And I 'll look over there and they will be gone." Tr. 193. Vallejos also reported hearing someone call her name. *Id.* After asking more specific questions about these "hallucinations," Dr. Parsons concluded it "seemed apparent that they were probably illusions rather than hallucinations." *Id.* Dr. Parsons opined Vallejos' intellectual abilities appeared to be quite low and she appeared to have relatively limited coping skills. At the time of this evaluation, Vallegos had not seen Dr. Gervais and thus had not received any prescription medication from him for her mental impairments. Tr. 192. Dr. Parsons diagnosed Vallejos with (1) Rule out Dysthymic Disorder and Alcohol Dependence (Axis I); and (2) Rule out Personality Disorder (Axis II).

Dr. Parsons completed a Psychological Source Statement of Ability to do Work-Related Activities (Mental) on the same day. Tr. 195-197. Dr. Parsons opined Vallejos was moderately limited in her ability to understand and remember detailed or complex instructions but was only mildly limited in her ability to understand and remember simple instructions. Dr. Parsons opined this was because she was distractable and due to low energy and depression. Tr. 195. Dr. Parsons further found Vallejos was mildly limited in her ability to carry out instructions and moderately limited in her ability to attend and concentrate and work without supervision.

11

However, Dr. Parsons opined that with treatment Vallejos could accomplish some tasks unsupervised. Tr. 196. In the areas of "social interactions," Dr. Parsons opined Vallejos was mildly limited in her ability to interact with the public, with coworkers, and with supervisors because she was distractable, depressed, and complained of physical pain that could interfere with her job functions. *Id.*

On May 23, 2001, Dr. Raiman K. Johnson, a psychologist and agency consultant, evaluated Vallejos. Tr. 238-243. Dr. Johnson found Vallejos was oriented to person, place and time, was of at least average intelligence, was cooperative, engaged in no maladaptive behavior, was not anxious concerning the evaluation process, her rate and flow of speech was within normal limits, her vocabulary and articulation was adequate, and she demonstrated adequate socialization skills. Tr. 239. Notably, Dr. Johnson found Vallejos "did not demonstrate any symptoms suggestive of an overt psychoses or neuroses." *Id.* Dr. Johnson also noted that, although Vallejos claimed she suffered from short and long term memory deficits, she was capable of recalling information adequately. Dr. Johnson gave examples to support his assessment. Dr. Johnson found Vallejos' judgment and insight within normal limits and opined she was capable of understanding abstract concepts. *Id.*

Dr. Johnson completed a Psychological Source Statement of Ability to do Work-Related Activities (Mental) form. Tr. 241-243. Dr. Johnson rated Vallejos as mildly limited as to her ability to (1) carry out instructions, (2) attend and concentrate, and (3) work without supervision. Tr. 241. Dr. Johnson rated Vallejos as moderately limited in her ability to (1) interact with the public, (2) interact with coworkers, (3) interact with supervisors, and (4) adapt to changes in the workplace. Dr. Johnson also rated Vallejos as moderately limited in her ability to be aware of

normal hazards and react appropriately and her ability to use public transportation or travel to unfamiliar places.  *Id.*

Although Vallejos challenges only the weight the ALJ accorded the opinions of Mr. Courter and Drs. Parsons and Johnson, the Court will set forth the other psychiatric and psychological evaluations found in the record.

On October 6, 1999, Dr. Robert L. Karp, a psychiatrist and agency consultant, evaluated Vallejos.  Tr. 117.  At that time, Vallejos reported she had to quit her last job at the candy factory because her legs hurt.  Dr. Karp asked Vallejos "Why she can't work now."  *Id.*  In response, Vallejos stated, "I can't find a job.  I'm always late or I get fired."  *Id.*  Vallejos informed Dr. Karp that her main problem was loss of memory as a result of sniffing paint when she was younger.  Vallejos' boyfriend informed Dr. Karp that "he [was] currently on disability for loss of memory from sniffing paint also."  *Id.*  The only other psychiatric problem Vallejos reported was "bad nerves."  *Id.*

As to her activities of daily living, Vallejos reported that she awakens at 6:30 a.m., irons clothes, cares for her children, walks the youngest child to school, and spends the rest of the day cleaning house and washing clothes.  Tr. 118.  After her children come home from school, Vallejos prepares dinner for them and takes them for a walk, sees her friends, and then gets the children ready for bed. Vallejos reported visiting with her acquaintances and her sister every day and with her friends less frequently.  Vallejos reported no hobbies and no social activities. Vallejos reported she had never seen a psychiatrist for treatment, had never taken any psychiatric medication, and had never been hospitalized for psychiatric problems.

> Dr. Karp's mental status examination is as follows:
>
> This is an attractive woman dressed in a plaid shirt and jeans. She looks younger than her stated age. She looks very nervous throughout the interview. She looks uncomfortable. She has tattoos around both wrists, a tatoo of her child across her neck and on her chest and says she has tatoos on her back. She is in good contact with the interviewer and the environment and tries to be friendly and cooperative. She shows no other abnormalities of speech nor of psychomotor activity. There is no evidence of loose associations and there is no evidence of hallucinations or delusions. She denies perceptual distortions. She said she feels "nervous" and she looks nervous. She shows a normal range of affect and there is no flatness or labile affect noted. Affect is appropriate to content. She denies suicidal or homicidal ideas now. She is of average intelligence but has a remarkably poor fund of information. She also has very poor skills. When I asked her to multiply two simple numbers she said, "what's multiply?" She did not know the President of the United States. She was only one day off on the date. She knew the purpose of the interview. She could remember 3 of 3 objects immediately and 3 of 3 objects after 5 minutes. She could only remember 5 digits forward properly but could also remember 5 digits backwards. She could perform simple commands. She could not subtract 7 from 100. When asked what, "You can't judge a book by its cover." meant, she said, "You can't trust anybody." She gave concrete interpretations to "spilled milk." When asked about similarities of an apple and an orange, she said, "They have seeds, the same shape, and you can peel them." If she was lost in the city she would "cry" and then she would "hide." There is no evidence of any problem for past memory and there is really no evidence of any significant impairment for recent or past memory either. She was alert and of clear sensorium.

Tr. 119. Dr. Karp noted Vallejos felt hopeless, was mildly depressed and experienced sleep problems, appetite problems, energy problems, bowel problems, and occasional crying spells. *Id.* Dr. Karp diagnosed Vallejos with (1) Axis I- Dysthymia, Alcohol Dependence – not current, Alcohol abuse– not current, Solvent Abuse– not current, Marijuana Abuse– not current, and (2) Axis II- Personality Disorder– NOS (not otherwise specified). Dr. Karp concluded, "At the current time, I see no significant impairment in her ability to understand or remember simple instructions or in her ability to persist and concentrate on tasks of basic work or to interact with the general public and/or coworkers and adapt to changes in the workplace that are related to her Axis I diagnosis." Tr. 120.

On October 11, 1999, Dr. Leroy Gabaldon, an nonexamining agency consultant, completed a Mental Residual Functional Capacity Assessment (Mental RFC) form and a Psychiatric Review Technique (PRT) form.  Tr. 138-150.  The PRT form indicates Dr. Gabaldon found Vallejos suffered from Dysthymia, Personality Disorder and Substance Addiction Disorder.  Dr. Gabaldon rated Vallejos as having slight degree of limitation in activities of daily living and social functioning.  Tr. 145.  Dr. Gabaldon also found Vallejos often had deficiencies of concentration, persistence, or pace.  *Id.*

On the Mental RFC form, Dr. Gabaldon found moderate limitations it the following areas: (1) ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to work in coordination with or proximity to others without being distracted by them; (5) the ability to interact appropriately with the general public; (6) the ability to accept instructions and respond appropriately to criticism from supervisors; (7) the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes; (8) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (9) the ability to respond appropriately to changes in the work setting; and (10) the ability to be aware of normal hazards and take appropriate precautions.  Tr. 147-148.  Dr. Gabaldon concluded that Vallejos "had the ability to engage in work that does not involve much social interaction or work that places many demands on her."  Tr. 149.

On October 24, 2000, Dr. Scott Walker, a psychiatrist and nonexamining agency physician, completed a Mental RFC form.  Tr. 209.  Dr. Walker reviewed the records and opined as follows:  (1) there was no evidence of limitation in the ability to remember locations and work-

15

like procedures; (2) the ability to understand and remember very short and simple instructions was not significantly limited; (3) the ability to understand and remember detailed instructions was moderately limited; (4) the ability to carry out very short and simple instructions was not significantly limited; (5) the ability to carry out detailed instructions was moderately limited; (6) the ability to maintain attention and concentration for extended periods was moderately limited; (7) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was moderately limited; (8) the ability to sustain an ordinary routine without special supervision was moderately limited; (9) the ability to work in coordination with or proximity to others without being distracted by them was not significantly limited; (10) the ability to make simple work-related decision was moderately limited; (11) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was not significantly limited; (12) the ability to interact appropriately with the general public was not significantly limited; (13) the ability to ask simple questions or request assistance was not significantly limited; (14) the ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited; (15) the ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited; (16) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness was not significantly limited; (17) the ability to respond appropriately to changes in the work setting was moderately limited; (18) the ability to travel in unfamiliar places or use public transportation was not significantly limited; and (19) the ability to set realistic goals or make plans independently of others was not significantly limited. Tr. 209-210. Dr. Walker noted "On balance the EOR

(evidence of record) indicates that the claimant, from a Psychiatric perspective, can understand, remember and perform at least 1-2 step repetitive tasks with adequate pace and persistence." Tr. 211.

On the same day, Dr. Walker completed a PRT form and evaluated Vallejos under sections 12.04 (Affective Disorders), 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders) of the Listing of Impairment. Tr.213-226. Dr. Walker opined Vallejos had a mild degree of limitation in activities of daily living and in maintaining social functioning and a moderate degree of limitation in maintaining concentration, persistence, or pace. Tr. 223. Dr. Walker supported his opinion stating "Psych consultative exam dated 9/00 no psych tx, medications or hospitalizations – reports she's slow at household tasks; hypnopompic/hypnogogic illusions described. Opined low intellectual ability." Tr. 225. The Court notes that Dr. Walker's reports were submitted prior to Vallegos' visit to Counseling Associates, Inc.

Vallejos contends the ALJ totally disregarded the opinions of Mr. Courter and Drs. Johnson and Parsons. In his decision, the ALJ found:

> Ms. Vallejos' condition was previously evaluated and adjudicated up to February 22, 2000. An integrated clinical summary was prepared at Counseling Associates, Inc. following an intake interview in August 2000. Ms. Vallejos related a wide variety of symptoms and, seemingly based upon those, the attending psychologist offered diagnoses of a Major Depressive disorder, Panic Attack disorder, and an Obsessive-Compulsive disorder (Exhibit 19F).
>
> Ms. Vallejos was given a psychological consultative examination in October 2000 by W. Parsons, Ph.D. Ms. Vallejos told Dr. Parsons that she was applying for disability due to a problem with her leg, depression and memory loss. She describes her daily activities as cleaning house and washing clothes, which she said took all day. Dr. Parson administered no standardized tests and offered no firm psychological diagnoses. He related Ms. Vallejos' statements and only offered that her intellectual abilities appeared low and that she had limited coping skills (Exhibit 17F).
>
> Ms. Vallejos was given another consultative psychological examination in May 2001 by R. Johnson, Ph.D. Ms. Vallejos related having problems with her left leg, arthritis, and

17

> depression. Dr. Johnson reported that Ms. Vallejos appeared of average intelligence; engaged in no maladaptive behavior; had normal speech; did not demonstrate any symptoms suggestive of an overt psychoses or neuroses; her executive functions were intact; judgment and insight were within normal limits; and, she was capable of understanding abstract concepts. Dr. Johnson considered her to be suffering from situational depression (Exhibit 25F).
>
> A March 20, 2002 letter from mental health counselor L. Courter offers that Ms. Vallejos is unable to work due to depression, memory issues, headaches, leg problems, ulcers, and an inability to interact with others (Exhibit 35F). <u>I do not fully credit Mr.Courter's conclusory opinion. First, this opinion is not offered by an acceptable medical source. As a counselor his opinions are defined in the regulations as originating from 'other sources.' Nor is his opinion supported by clinical records encompassing much more than an August 2001 reference to agorophobia (Exhibit 35F4). Dr. Johnson saw Ms. Vallejos after she began her relationship with Counseling Associates, and he did not identify any overtly significant mental problems. Mr. Courter's treating relationship with Ms. Vallejos has been duly considered. However, her level of overall functionality contradicts the presence of disabling mental illness.</u> When Ms. Vallejos' mental status is evaluated under Sections 12.04, 12.06, and 12.08 of the regulations, I find no more than 'mild' limitations in her activities of daily living. She lives with and cares for three children effectively. Ms. Vallejos testified she engages in a wide range of routine domestic activities. Dr. Johnson predicted that Ms. Vallejos may have moderate limitations in her ability to interact with co-workers, supervisors and the public. However, Ms. Vallejos has indicated in documentary statements that she has no problems getting alone with family, friends, neighbors and authority figures (Exhibit 3E2). Accordingly, no more than 'moderate' limitations in social functioning are evident as they relate to Ms. Vallejos' potential ability to work in vocational situations requiring social contact. There is no evidence of an ongoing thought disorder or severe cognitive limitation. Ms. Vallejos has the capacity to understand and remember simple instructions, but may have some limitations in her capacity to attend and concentrate. Even so, no more than 'moderate' limitations are supported in the domain of concentration, persistence and pace. No extended episodes of decompensation are documented and no Section 12.04 or 12.06 'C' criteria are fulfilled.

Tr. 14-15 (emphasis added). It is clear from the ALJ's decision that he considered Mr. Courter's opinion that Vallejos was disabled and gave specific legitimate reasons for rejecting it. Mr. Courter based his opinion that Vallejos was disabled on her mental impairments and her "medical issues," which he listed as headaches, leg problems, and ulcers  Tr. 279. The ALJ had the record before him and found Mr. Courter's opinion was not supported by the record. The ALJ weighed Mr. Courter's opinion along with the opinions of the other mental health care specialists. Additionally, the record indicates the ALJ also considered the opinions of Drs. Johnson and

Parsons and the other mental health care specialist as evidenced by the ALJ's RFC determination in which he found Vallejos could perform "routine, one to two step unskilled work activities which require limited social contact." Tr. 16. Thus, the record does not support Vallejos' argument that the ALJ "<u>totally</u> disregards the totality of the opinions." Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 5. It is the province of the Commissioner to resolve conflicting evidence. It is not this Court's role on appeal to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994). The Court finds that the ALJ's decision is supported by substantial evidence, and he applied correct legal standards. Accordingly, the ALJ's decision is affirmed.

      A judgment in accordance with this Memorandum Opinion will be entered.

 

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**